UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X

In re:                                          :
                                                :        Chapter 11
OLD CARCO LLC, *et al.,*                         :        Case No. 09-50002 (SMB)
                                                :
                            Debtors.             :
----------------------------------------------X
SHELLEY GOODALL,                                 :
                                                :
                            Plaintiff,           :
                                                :
              -against-                          :        Adv. Proc. No. 17-01185 (SMB)
                                                :
CHRYSLER, INC. and FCA US LLC,                   :
                                                :
                            Defendants.          :
----------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## REGARDING MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT

**A P P E A R A N C E S :**

SHELLEY GOODALL
*Plaintiff Pro Se*
1875 Florida Club Dr.
Unit # 7208
Naples, FL 34112

SULLIVAN & CROMWELL LLP
*Attorneys for Defendants*
125 Broad Street
New York, NY 10004

     Brian D. Glueckstein
       Of Counsel.

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

     The Plaintiff was involved in a pre-petition motor vehicle accident while driving a

car manufactured by Old Carco LLC, f/k/a Chrysler LLC ("Old Chrysler"). She suffered

injuries which she attributes the chemicals released from the deployed airbag in her vehicle.  She sued New Chrysler in 2016 to recover damages.

After the accident (but well before the Plaintiff's lawsuit), Old Chrysler and numerous affiliates (collectively, the "Debtors"), filed chapter 11 petitions and sold substantially all of their assets to the defendant FCA US LLC ("New Chrysler").  The provisions of the sale order and the parties' asset purchase agreement cut off the right to sue New Chrysler for injuries resulting from pre-petition accidents.  The Debtors did not serve the Plaintiff with actual notice of the sale that New Chrysler now contends bars her suit.

The motion raises three questions.  First, was the Plaintiff a known creditor entitled to actual notice of the sale which the Debtors admittedly did not send?  Second, assuming the Plaintiff was denied due process because she did not receive actual notice, must she also show that she was prejudiced by lack of notice?  Third, if she must show prejudice, has she?

For the reasons that follow, the Court concludes that Plaintiff's status as a known creditor presents a factual issue, and further proceedings are required.  As further explained, the Court will resolve this first question before reaching the two questions relating to the issue of prejudice.

## BACKGROUND

### A.    The Accident and Plaintiff's Inquiries

The background facts pertaining to the Plaintiff's motor vehicle accident are derived from the Plaintiff's *Pro Se Civil Rights Complaint*, dated Aug. 11, 2016 (the

"Complaint") filed in the United States District Court for the Central District of Illinois ("Illinois District Court"),[1] documents either attached to the Complaint or submitted to the Court by the Plaintiff and the decision in *Goodall v. Chrysler, Inc.*, No. 3:16–cv–03228, 2017 WL 4076093 (C.D. Ill. Sept. 14, 2017) ("*Goodall*").

At the time of the accident, the Plaintiff owned a 1996 Chrysler Sebring (the "Vehicle"). On January 1, 2009, while driving the Vehicle, she was struck by another motor vehicle. The airbag in the Vehicle deployed and tore, apparently exposing the Plaintiff to chemicals in the airbag, including sodium azide. It appears from various reports that the Plaintiff has submitted that exposure to sodium azide may cause severe medical problems.

On or before January 7, 2009, the Plaintiff contacted or was put in touch with Old Chrysler's Customer Claims Resolution Center. The record does not reflect whether the Plaintiff initiated a telephonic or written communication or what she said. The response by Chrysler's Customer Claims Resolution Center thanked the Plaintiff (then known as Shelly Burg) for contacting Old Chrysler, stated that it was proceeding with its review, expected to inform the Plaintiff of its decision within twelve days, and in bold face, asked her to notify Old Chrysler immediately if she had already settled with her insurance company.[2]

Old Chrysler's s next response shed light on the nature of the Plaintiff's earlier

---

[1]     A copy of the Complaint is located at ECF Doc. # 1-2. "ECF" refers to the electronic docket in this adversary proceeding. "EFC Main Case" refers to the docket in the main bankruptcy, Case No. 09-50002.

[2]     A copy of the January 7, 2009 letter is attached to the Complaint

communication. After completing its investigation, it sent the Plaintiff a letter, dated

January 12, 2009, from the Customer Claims Resolution Center, Office of the General

Counsel.[3] This letter began by thanking the Plaintiff for contacting Old Chrysler and

"raising concerns that you have with the [Vehicle]. We are always concerned to hear of

injuries and accidents involving our customers and their vehicles." The Plaintiff had

apparently questioned whether her injuries resulted from exposure to the chemicals in

the Vehicle's airbag, because Old Chrysler's letter reported the following:

> Chrysler LLC conducted an investigation into the incident and inspected
> the vehicle. Specifically, the inspector found no problems with the
> subject's air bag system. Air bags do not contain any chemicals. The
> burns you sustained were caused by the the [sic] 200 mph force of the
> deploying air bag. This is the amount of force mandadted [sic] by Federal
> law. The powder you noticed was a talc powder that is used so that the
> folds of the air bag do not stick together. This talc is necessary so that
> when needed, the air bags will deploy correctly, as they did in your
> accident.

The Plaintiff sought medical treatment from Klinger Derm on January 13, 2009,

complaining of second degree burns to her face resulting from a chemical in the airbag.

According to the extract of the medical record she submitted, (ECF Doc. # 15, at ECF pp.

17 of 45),[4] Klinger Derm listed the Plaintiff's complaint, and stated that her attorney

"wanted her to be checked and see if this will improve." The page provided by the

Plaintiff referenced more notes on page four, but no additional pages have been

supplied. The treating medical provider diagnosed "abrasions secondary irritant

dermatitis r/o secondary to contact dermatitis" and prescribed washing with soap and

---

[3]     The January 12, 2009 letter is also attached to the Complaint.

[4]     "ECF pp." refers to the page numbers printed by the Court's CM/ECF system at the top of each
page.

water.[5]  In addition, the Klinger Derm medical record identified the Old Chrysler

contact, Chuck Fisher, listed his telephone number and included notations written in a

different handwriting that identified the chemical in the airbag as sodium azide, and

listed who I assume to be the Plaintiff's attorney, his paralegal and their telephone

number.

## B.    The Bankruptcy and the Sale

On April 30, 2009, the Debtors filed chapter 11 petitions in this Court.  The

Debtors simultaneously entered into a Master Transaction Agreement ("MTA")[6]

agreeing to sell substantially all of their assets free and clear of all liens, claims and

liabilities (other than "Assumed Liabilities") to New Carco Acquisition LLC (*i.e.*, New

Chrysler).  Three days later, the Debtors filed their motion to sell substantially all of

their assets to New Chrysler.[7]  The *Sale Motion* was not served on the Plaintiff.  (*See

Affidavit of Mailing*, sworn to May 3, 2009 (ECF Main Case Doc. # 195).)

On May 7, 2009, the Court signed an order approving bidding procedures for the

sale of the Debtors' assets, and scheduled a hearing to approve the sale for May 27,

---

[5]     The Plaintiff was also under treatment for traumatic glaucoma which had worsened during the
year following the accident.  (ECF Doc. # 15, ECF pp. 13-14 of 25.)

[6]     The MTA is attached as Exhibit B to the *Declaration of Brian D. Glueckstein in Support of FCA
US LLC's Motion to Dismiss Plaintiff's Complaint*, dated Jan. 19, 2018 ("*Glueckstein Declaration*") (ECF
Doc. # 9.)

[7]     *See Motion of Debtors and Debtors in Possession, Pursuant To Sections 105, 363 And 365 of the
Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, for (I) an Order (A) Approving Bidding
Procedures and Bidder Protections for the Sale of Substantially All of the Debtors' Assets and (B)
Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) an
Order (A) Authorizing the Sale of Substantially of the Debtors' Assets, Free and Clear of Liens, Claims,
Interests and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases in Connection Therewith and Related Procedures, and (C) Granting
Certain Related Relief*, dated May 3, 2009 ("*Sale Motio*n") (ECF Main Case Doc. # 190.)

2009.[8]  The *Bidding Procedures Order* directed the Debtors to serve the notice of sale

by first class mail within two days of the entry of the order (by May 11, 2009),[9] *inter*

*alia*, on "all parties known to assert Claims upon the Assets," (*Bidding Procedures*

*Order* ¶ 13(a)), and within the same deadline, deliver the notice of the sale for

publication in the national edition of *USA Today*, *The Wall Street Journal*, *The New*

*York Times* and the Worldwide Edition of *The Financial Times*, (*id.* ¶ 13(b)), as well as

on the website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy

Solutions, LLC.  (*Id.* ¶ 13(c).)

The Debtors did not mail the notice of sale to the Plaintiff.  (*See Affidavit of*

*Mailing*, sworn to May 15, 2009 (ECF Main Case Doc. # 930).)  They did, however,

publish notice in accordance with the *Bidding Procedures Order*.[10]  (*See* ECF Main Case

Doc. # 1255).)

The Court approved the sale to New Chrysler on June 1, 2009.[11]  New Chrysler

did not assume any liability for accidents occurring prior to the closing under the *Sale*

---

[8]      *See Order, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules
2002, 6004 and 6006, (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors'
Assets, (B) Authorizing the Debtors to Provide Certain Bid Protections, (C) Scheduling a Final Hearing
Approving the Sale of Substantially All of the Debtors' Assets and (D) Approving the Form and Manner
of Notice Thereof,* dated May 7, 2009 ("*Bidding Procedures Order*") ECF Main Case Doc. # 492).)

[9]      The *Bidding Procedures Order* was entered on May 8, 2009, and the two day deadline for mailing
fell on Sunday, May 10, 2009.  Accordingly, the deadline was extended one day to Monday, May 11, 2009.
*See* FED. R. BANKR. P. 9006(a)(1)(C).

[10]     *See Affidavits 0f Publication in Connection to the Notice of Proposed Sale of Substantially All of
the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and Final Sale Hearing
Related Thereto,* filed May 19, 2009 (ECF Doc. # 1255).)

[11]     *See Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All
Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain
Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III)
Granting Related Relief,* dated June 1, 2009 ("*Sale Order*") (ECF/Main Case Doc. # 3232).  A copy of the
*Sale Order* is attached as Exhibit A to the *Glueckstein Declaration.*

*Order*, the original MTA, or the MTA as subsequently amended (collectively, the "*Sale*

*Documents*").  *See Goodall*, 2017 WL 4076093, at *9.

## C.    The Plaintiff's Action

At some point, the Plaintiff had asked Old Chrysler or New Chrysler for the

Material Safety Data Sheet ("MSDS") relating to the airbag, but the record does not

reflect when.  New Chrysler produced the MSDS in 2016.  It revealed, contrary to Old

Chrysler's January 2009 representation, that the Vehicle's airbag contained chemicals,

including sodium azide, and listed the serious side effects from overexposure.  By then,

the Plaintiff was complaining of burns on her face, neck, chest and scalp, damage to her

airways, glaucoma in both eyes, spots on the left side of her brain which caused a "mini

stroke," blood pressure problems, rashes and scarring.  She contends that had Old

Chrysler or New Chrysler disclosed the MSDS sooner, her doctors may have been able to

provide better care.

Shortly after receiving the MSDS, the Plaintiff commenced this action *pro se* in

the Illinois District Court on August 11, 2016.  New Chrysler moved to dismiss based on

the expiration of the statute of limitations, or, in the alternative, to transfer the litigation

to this district for referral to this Court to interpret the *Sale Order*.  The Illinois District

Court denied the motion to dismiss noting that the Complaint alleged sufficient facts to

equitably estop New Chrysler from asserting the statute of limitations defense based on

Old Chrysler's January 12, 2009 misrepresentation that the airbag did not contain

chemicals and the delay in producing the MSDS.  *Goodall*, 2017 WL 4076093, at *6-7.

The Illinois District Court granted the alternative request to transfer venue to this

7

district.  *Id.* at *11.  Following transfer to the United States District Court for the

Southern District of New York, the adversary proceeding was referred to this Court.

## DISCUSSION[12]

### A.    Standard Governing the Motion

New Chrysler has moved to dismiss the Complaint for failure to state a claim

upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  The Court has noted in connection with similar motions filed in other cases

involving New Chrysler that the usual rules applicable to such motions do not apply.

Instead, the Court's role is to serve as a gatekeeper, and determine whether the claim

asserted against New Chrysler is barred by the *Sale Documents*.  If the claim passes

through the gate, the court presiding over the action must determine whether the claim

is legally sufficient.  *Bennett v. FCA US LLC* (*In re Old Carco LLC*), Adv. Pro. No. 18–

01035 (SMB), 2018 WL 3155115, at *5 (Bankr. S.D.N.Y. June 26, 2018); *Dearden v. FCA

US LLC* (*In re Old Carco LLC*), 582 B.R. 838, 843-44 (Bankr. S.D.N.Y. 2018).  New

Chrysler's motion in this case and similar cases is, in truth, a motion to enforce the *Sale

Documents*, and enjoin the prosecution of the cause of action rather than a motion to

dismiss based on legal insufficiency.

Under the *Sale Documents*, New Chrysler assumed liability under certain

circumstances and to a certain degree for post-closing accidents involving motor

vehicles manufactured pre-closing by Old Chrysler.  In the past, the issues referred to

this Court generally required the Court to determine whether, in the given

---

[12]    The Court has jurisdiction to interpret the *Sale Documents*.  *See TRW Automotive US, LLC v. Old Carco Liquidation Trust* (*In re Old Carco LLC*), 529 B.R. 42, 53-54 (Bankr. S.D.N.Y. 2015).

circumstances, the *Sale Documents*, barred the claim asserted in the particular complaint entirely or limited New Chrysler's liability.

This is not the typical case. The Plaintiff alleges injuries resulting from a pre-petition accident, and the clear terms of the *Sale Documents,* prohibit her from suing New Chrysler for her injuries. Instead, the question in the first instance is whether she was denied due process, and hence, is not bound by the *Sale Documents*, because the Debtors did not provide her with actual notice of the sale.

## B.    Due Process

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The due process requirement applies in the bankruptcy context, *see Elliott v. General Motors LLC (In re Motors Liquidation Company)*, 829 F.3d 135, 159 (2d Cir. 2016) ("*Elliot*"), *cert. denied*, 137 S. Ct. 1813 (2017), and "a claim cannot be discharged if the claimant is denied due process because of lack of adequate notice." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014); *accord Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995), *cert. denied*, 517 U.S. 1137 (1996); *Morgan Olsen L.L.C. v. Frederico* (*In re Grumman Olsen Indus., Inc.*), 467 B.R. 694, 706 (S.D.N.Y. 2012).

The type of notice required by due process depends on whether the creditor is "known" or "unknown." "A creditor is 'known' if its identity is known to or reasonably can be ascertained by the debtor through 'reasonably diligent efforts.'" *Unsecured*

9

*Claims Estate Representative of Teligent, Inc. v. XO Commc'ns, Inc.* (*In re XO Commc'ns, Inc.*), No. 04 Civ. 01489 LAK, 2004 WL 2414815, at *1 (S.D.N.Y. June 14, 2004); *accord Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 804 (1983) (name and address of party are "reasonably ascertainable" if they can be discovered through the exercise of "reasonably diligent efforts."); *Chemetron Corp.*, 72 F.3d at 346 (same). An "unknown" creditor, on the other hand, is a creditor whose identity or claim is not "reasonably ascertainable" or is merely "conceivable, conjectural or speculative." *In re Thomson McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991) (citation omitted); *see also Mullane*, 339 U.S. at 317 (noting that it was reasonable to dispense with more certain notice to claimants "whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to the knowledge [of the debtor in possession]").  "If the debtor knew or reasonably should have known about the claims, then due process entitles potential claimants to actual notice of the bankruptcy proceedings, but if the claims were unknown, publication notice suffices. *Elliot*, 829 F.3d at 159.

        The line between known and unknown creditors is not always obvious or easy to draw.  Reasonable diligence does not require "impracticable and extended searches ... in the name of due process," *Mullane*, 339 U.S. at 317–18, and a debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it."  *Brooks Fashion Stores, Inc. v. Michigan Employment Sec. Comm'n (In re Brooks Fashion Stores, Inc.)*, 124 B.R. 436, 445 (Bankr. S.D.N.Y. 1991) (citation omitted).  As one Court in this district has explained:

> Known creditors are defined as creditors that a debtor knew of, or should
> have known of, when serving notice of the bar date.  Among known

> creditors may be parties who have made a demand for payment against a
> debtor in one form or another before the compilation of a debtor's
> schedules.  Typically, a known creditor may have engaged in some
> communication with a debtor concerning the existence of the creditor's
> claim.  This communication by itself does not necessarily make the
> creditor known.  Direct knowledge based on a demand for payment is not,
> however, required for a claim to be considered "known."  A known claim
> arises from facts that would alert the reasonable debtor to the possibility
> that a claim might reasonably be filed against it.

*In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993),

*aff'd, In re Drexel Burnham Lambert Grp. Inc.*, 157 B.R. 532 (S.D.N.Y. 1993); *see*

*Chemetron Corp. v. Jones*, 72 F.3d at 347 ("The requisite search instead focuses on the

debtor's own books and records.  Efforts beyond a careful examination of these

documents are generally not required.  Only those claimants who are identifiable

through a diligent search are 'reasonably ascertainable' and hence 'known' creditors.").

### C.    Was the Plaintiff a Known Creditor?

Whether the Plaintiff was a known creditor is a question of fact.  Certain evidence

suggests that she was.  The Plaintiff communicated with Old Chrysler immediately after

the accident and prior to the commencement of the bankruptcy case regarding burns

which she seemingly attributed to chemicals in the Vehicle's airbag.  The response from

the Customer Claims Resolution Center, Office of the General Counsel, acknowledged

the "concerns" she had raised about her Vehicle.  It stated that it had investigated the

accident, determined that the airbags did not contain chemicals and informed the

Plaintiff that her burns were caused by the force of deployment.  Thus, Old Chrysler's

records show that Old Chrysler knew the Plaintiff's identity, and possibly, that she was

attributing her injuries to a defective or inherently dangerous airbag.

On the other hand, mere communication about a possible claim may not be

enough.  Other evidence implies that the Plaintiff was not asserting a claim resulting from the accident, but instead, only seeking information.  She requested the MSDS at some point, possibly after the sale, and contends that she did not know about the harmful chemicals in the airbag until 2016.  *Goodall*, 2017 WL 4076093, at *7.  If she did not attribute her injuries to the chemicals in the airbag until then, it is less likely that she held Old Chrysler responsible for her injuries before then.

As the *Drexel* Court observed, "[a] known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it." As of now, the Court has Old Chrysler's responses but does not have the Plaintiff's inquiries which, even if oral, were likely reflected in Old Chrysler's customer service records.  The Court requires a more complete record to make that determination, including all of the communications between the Plaintiff and her representatives on the one hand, and Old Chrysler and its representatives on the other, between the date of the accident and the approval of the sale by this Court.  In addition, even if the Plaintiff was unaware of her claim against Old Chrysler, Old Chrysler's knowledge about the dangers of the chemicals in its airbags would also be relevant in determining whether the Plaintiff was a known creditor.  *See DPWN*, 747 F.3d at 153 ("If DHL lacked such knowledge, the inquiry will then shift to whether United knew or should have known of its potential antitrust liability such that due process required it to notify DHL of the potential claim.")  In other words, whether Old Chrysler knew independently that the Plaintiff's injuries were caused by the chemicals in the airbag would also be relevant.

## D.    Prejudice

At oral argument, the Court asked for further briefing on the due process issue.

In its supplemental memorandum, New Chrysler argued that the Plaintiff had not been prejudiced by the failure to receive actual notice even if she was entitled to it. (*FCA US LLC's Supplemental Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint*, dated July 17, 2018, ¶¶ 20-23 (ECF Doc. # 16).) Other creditors had objected to New Chrysler's failure or refusal to assume liability for pre-closing accidents, and those objections were overruled.

The *Elliott* Court considered but did not resolve whether a person denied due process must also demonstrate prejudice. After noting the split in authority, *see Elliott*, 829 F.3d at 161-62 & n. 25, the Court ruled that if the party must show prejudice, the determination of prejudice could only be made in light of all the evidence:

> Assuming plaintiffs must demonstrate prejudice, the relevant inquiry is whether courts can be confident in the reliability of prior proceedings when there has been a procedural defect. *See Lane Hollow Coal Co. v. Dir., Office of Workers' Compensation Programs*, 137 F.3d 799, 808 (4th Cir. 1998) (considering "fairness of the trial and its reliability as an accurate indicator of guilt"); *see also Rose v. Clark*, 478 U.S. 570, 577–78, 106 S. Ct. 3101, 92 L.Ed.2d 460 (1986) (asking whether adjudication in the criminal context without procedural protections can "reliably serve its function as a vehicle for determination of" a case). In considering reliability, "[t]he entire record must be considered and the probable effect of the error determined in the light of all the evidence." 11 Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 2883 (3d ed. 2016) [hereinafter "Wright & Miller"]; *see Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 50–51 (2d Cir. 2014). "[I]f [the court] cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," then it must find a procedural due process violation. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946).

*Id.* at 162-63. *Accord Bogdan Law Firm v. Marsh USA, Inc.* (*In re Johns-Manville Corp.*), 18-cv-1228 (JSR), 2018 WL 3628902, at *7 (S.D.N.Y. July 25, 2018).

New Chrysler may ultimately be correct that the Plaintiff cannot show prejudice, but that begs the unsettled question of whether she must show prejudice.  In addition, because the Court requested simultaneous supplemental briefing on the due process issue, the Plaintiff has not had an opportunity to respond to New Chrysler's prejudice argument.  Accordingly, the Court will deny New Chrysler's motion to enforce the *Sale Documents*, based on the factual issues identified earlier, and resolve the initial question of whether the Plaintiff was a known creditor.  In the event the Court concludes that she was entitled to actual notice, the Court will then consider the question of prejudice upon further briefing.

The attorney for New Chrysler should schedule a hearing, at which the Plaintiff may appear telephonically, to discuss further proceedings.

So ordered.

Dated:   New York, New York
      August 10, 2018

               /s/ *Stuart M. Bernstein*
                STUART M. BERNSTEIN
            United States Bankruptcy Judge

14